Good morning, everyone. The first case on the agenda this morning is case number one, number 119392, in re Linda B, counsel for appellant. Are you ready? Appellee, you may proceed. May it please the court. I'm Laurel Spahn, an attorney with the Legal Advocacy Service, a division of the Illinois Guardianship and Advocacy Commission. Legal Advocacy Service was appointed as the trial counsel for Linda B, and I was her assigned staff attorney. When I first met with Linda B on the medical floor at Mount Sinai Hospital in Chicago, I explained the rights she has as a person facing involuntary commitment. I told her what I tell all my clients in this situation. Don't be alarmed when you are alleged to have a mental illness and you are facing involuntary commitment. When you're being held without your permission, that the hospital has to file a petition with the court in order to hold you with legal authority, and then certain rights kick in, like appointment of a lawyer and the right to a hearing. It turned out, though, that Ms. Linda B had been brought to the hospital about two and a half weeks earlier, that was April 22nd, for mental health reasons. But the record shows that Linda B, the record shows, however, Linda B was not brought to the hospital for medical reasons. Then after tests revealed non-psychiatric issues that required treatment, Linda B's doctor said she had to be put on a medical floor. She received treatment, though, from day one and was not allowed to leave. Can we talk about that for just a second, Ms. Spahn? Certainly. I know we're going to hear the opposite as to whether or not Linda B was there voluntarily or involuntarily, right? Can you only prevail on your argument if this court finds that she was there involuntarily? Is your argument over, phrase it another way, is your argument over if we find that she was there voluntarily? If this court finds that Linda B was voluntarily on the medical floor starting April 22nd until May 8th, does my argument fail? Right. I guess the argument would fail. And I know your position is it wasn't that she was there involuntarily, but there is a factual dispute with respect to that, right? Well, there is no evidence in the record that she was there voluntarily. And I'd like to address that she was held with one-on-one supervision from day one. She was treated as a psychiatric patient from day one. She came to the hospital and was noted as being admitted because she was angry, agitated, intolerable, and threatening. Who took her to the hospital? The record doesn't show who brought her to the hospital. But once she got to the hospital, she was known to the hospital because she had been to the hospital previously that year as a psychiatric patient. So this was in April, but she had been in Mount Sinai in January of the same year. Could I ask you a legal question as to how this statute is supposed to work? The Mental Health, which is a longer title, but the Mental Health Code provides in Chapter 3, it's called admissions. And it says a person may be admitted as an inpatient to a mental health facility for treatment of a mental illness only as provided in this chapter. Then it sets out in Article 3 a process for an informal admission. And that includes an examination by the facility director to determine whether or not the person is clinically suitable for admission on an informal basis. There's a second type of admission that the statute allows, Article 4, voluntary admission. And that is triggered by a filing of an application with the facility director of the facility. If the facility director determines and documents in the recipient's medical record that the person is clinically suitable for admission as a voluntary recipient and has the capacity to consent to voluntary admission. And then the third type of admission the statute allows is the section on involuntary admission that we've been talking about. Additionally, the statute sets out that every mental health facility shall maintain adequate records, which shall include the section of this chapter under which the recipient was admitted. So the statute says there are only three ways that a person can come to be treated for mental illness in a mental health facility. Each one of them requires documentation and the statute requires that the hospital keep that documentation. Do we have anything in our record to show that in fact the statute was complied with in terms of the documentation of either an informal or a voluntary admission? There is nothing in the record to show how this person was admitted. All we have is on May 9th a petition was filed. And it was an arbitrary date. So on May 9th the facility director, Connie Shea Hadley, prepared a petition and then presented it to the facility director herself, Connie Shea Hadley, and filed the petition with the court. And she did that pursuant to Article 6 of the statute? Right. That is the involuntary, one of the sections on involuntary admission, involuntary admission by certificate. Okay. And as this court said in Andrew B., that section of the statute itself creates a timeline that is triggered only when the, I'm not sure if that's the right word, but is triggered by the filing of a petition by the director of the mental health facility. Correct? That's correct. So under Andrew B., it appears that in terms of the statutory requirements under involuntary admission that that was complied with. Well, here's the problem. The problem is that Ms. Linda B. came into the hospital on April 22nd and was treated as a mental health recipient. The fact that she was also getting IVs, telemetry for heart monitoring, did not change the fact that she was also prevented from leaving, that she was getting what is considered treatment, pursuant to the definition of treatment under the mental health code. Treatment under the mental health code is evaluation, diagnosis, hospitalization. She was getting all of those things. She was having a regular psychiatric evaluation and psychiatric care on a daily basis. She was prevented from leaving. The doctor says we did not need consent for her care. She was being held against her will. So what does the record say? Why doesn't she need? Why don't they? When the statute says there are only three ways to admit someone, what does the doctor say? I'm sorry. What does the doctor say about admission or? Right. You said they had her consent. Is there some? The doctor said we did not need consent. The doctor said we did not need consent for medical. We only needed consent for psychotropic medication. The doctor ignores the concept of treatment as confinement, as evaluation, as a diagnosis, as regular care, as a psychiatric patient. The doctor doesn't address that. The doctor is looking at consent only for psychotropic medication. The doctor said for medical, we don't need consent. Somehow this 51-year-old African-American woman was being held against her will at Mount Sinai starting April 22nd under no legal authority. There was no consent for her to be held, and she was not allowed to leave via the one-on-one supervision that she was getting all the time, according to the doctor. And then on May 8th, a petition was prepared, filed on May 9th. So it was about two and a half weeks later when that petition for her involuntary admission was filed. There is nothing that happened on that date, two and a half weeks after her hospitalization, to trigger that admission, except that it was an arbitrary date. The hospital pulled out of thin air. So that's the problem that we have here. If a person has a dual diagnosis, in other words, they have a psychiatric illness and they also have a medical illness, and they're admitted to a facility like Mount Sinai, and they're treated for their medical condition, do they have to be, is it your position that they have to be, that the procedures of the mental health code have to take place before they give them psychiatric treatment, even though they know they are under psychiatric treatment? Well, in this situation, this is a person who came in as a mental health patient. She was admitted because of her mental health symptoms. She was admitted because she was angry, agitated, threatening. There were no signs of non-psychiatric problems that were visible. She came to the hospital for those mental health issues. And then she was admitted because she also had medical issues. So for her protection, so that there is some legal authority to hold her, and so she is not held without due process, yes, there should be a petition filed. It also protects the hospital, because then the hospital has legal authority to hold her. So yes, there should be a petition for involuntary admission filed. And as I said, because she is also receiving non-psychiatric medical treatments, it doesn't change the fact that she is getting what is defined as mental health treatment under the code. Do you agree that a person's status within the hospital can change during the course of treatment in this case if she came in voluntarily and was being treated for medical purposes that it could later change the need for mental health treatment? Well, in this case, she came in, and there is no indication that she consented to any kind of treatment. Do we have any information at all in the record as to how she got there, why she came, other than how she was being treated? Well, we have the information that she came in because of mental health symptoms, and we have the doctor saying throughout the record that she was not agreeing to any treatment, either for psychiatric or for non-psychiatric. So we have that in the record. And the doctor is originally from Russia, so I know that it's difficult to understand her at some points. Throughout the record, she does indicate that the respondent is not consenting to treatment. And she's not consenting to psychiatric treatment. She's not consenting to medical treatment. So the record as a whole does indicate she is not consenting. So this was not a situation where, for Linda B, that her condition changed during the hospitalization. This was a situation where the hospital realized there's no basis to hold her, we need to file something, and then it did so at an arbitrary date and time. So we are urging this court to reverse the appellate court and to provide clarity on what counts as a mental health facility under the Code's definition. We also ask that you clarify admission as when a person enters a mental health facility so that it is not an arbitrary date of the facility's choosing. With these points clarified, facilities, courts, and attorneys in involuntary commitment cases will know when the clock starts on filing commitment petitions. Another benefit is that hospitals will have legal authority to hold people who come into their facilities. Ms. Spann, you've been arguing that she went in for psychiatric reasons, and she had been previously at Mount Sinai in their psychiatric division or floor. This time, however, she was admitted to the medical, but you're arguing that she was only receiving psychiatric. No, no, no. I'm not arguing that she was only receiving psychiatric care. But she went in for psychiatric reasons and was admitted to a medical floor, received psychiatric treatment as well as then medical, but she didn't go in for the medical. So why was she not admitted to the psychiatric floor?  She had to be admitted to a medical floor because of her non-psychiatric conditions. She had anemia, tachycardia. She required IVs. She required telemetry monitoring. And as we explained in our opening brief, those things require tubes, stands, monitoring that may not be safe to give on a psychiatric unit because of risks to other patients. And that may be why the doctor said she had, quote, had to be put on a medical unit as opposed to the dedicated psychiatric unit of the hospital. So today, people are receiving mental health care in a variety of settings, not just in a dedicated psychiatric unit of a hospital. The doctor here testified that she sees four or five patients on a regular basis on the general medical floor of the hospital. So this is not a unique occurrence to Linda B. We cite in our opening brief that 68% of mental health patients have a comorbid medical condition, and that's according to the Robert Woods Johnson 2011 study. So this is not a unique occurrence for Ms. Linda B, that a mental health recipient would have concurrent non-psychiatric medical issues and would need to receive treatment concurrent with psychiatric treatment in a different, maybe for their non-psychiatric issues in another part of the hospital. But that does not dilute that they're also receiving mental health treatment as defined by the Mental Health Code. And, you know, I just want to point out the Mental Health Code defines treatment as hospitalization, partial hospitalization, diagnosis, evaluation, psychotherapy, pharmacology, and other services to provide a benefit to the person with mental illness. And where does a person receive treatment as defined by the Code? Treatment is provided in a mental health facility defined by the Code. So then the definition of a mental health facility is a place, basically a place that provides treatment. So Mount Sinai here is a licensed private hospital that provides treatment as defined by the Code. Would you be asking us if the first responder brought someone who had psychiatric problems to an ER and that was then a psychiatric center or psychiatric facility? Well, Section 3-6 of the Code recognizes that an emergency room is a mental health facility. The Illinois Department of Public Health has determined that an emergency room is a mental health facility. It is a place where people receive hospitalization, diagnosis, treatment, pharmaceuticals, and other services to improve their condition. So, yes, people are receiving treatment for mental illness in emergency rooms nowadays. And that's one of the reasons why we have asked you to consider this case. And it's one of the reasons why we've argued that this meets the public interest exception. Because case law already recognizes under 3-6-0-6 that peace officers can bring a person to a mental health facility. And if they bring a person to a mental health facility, they need to either complete the petition for involuntary admission or be named as a witness. And if that doesn't happen, then the petition should be dismissed. I see that my red light is on. If you have more questions, I can answer those or I would reserve time for rebuttal. Thank you very much. May it please the Court. Counsel, my name is Matthew Connors and I represent the people of the state of Illinois. The issue before this Court is whether or not the petition for involuntary treatment is properly granted. Now, before that question can be answered, this Court must first determine whether or not the issue is moot. Respondent touched upon the mootness doctrine alleges that public interest exception applies here. But it is the people's position that under the second prong of the public interest doctrine, an authoritative determination of the question that is desirable for future guidance of public officers does not apply. This Court has previously indicated that there is not a general mootness exception for mental health cases. Furthermore, in the reply response, it explicitly states that the question is needed for guidance. However, in Andrew B., this Court has stated things that should be guidance is for disputes between courts, disputes between state agencies, or between the state attorney's office, or issues of first impression. This case does not fall within the ambit of any of those, and as such, people submit that the petition is moot. Turning to the substance of the argument, however, this Court was correct to draw upon the question of the hospital on April 22nd. Counsel has indicated that there is nothing in the record which supports the position that her presence there was anything but involuntary. The record does not bear that out. As indicated in both the appellate court findings and in the doctor's testimony, respondent was admitted because she suffered a number of health problems. She had anemia, she had hypertension, she had COPD, she has not been taking care of her medications. That indicates that her initial entry into Mount Sinai Hospital's medical floor was for the purpose of medical treatment. This issue could have been more fully developed below. There was a question at page 36 of the record, touched upon by respondent, where there was a question of whether or not respondent could force medication for HIV. At that point, the circuit court sustained an objection and indicated, if you want to get into that or anything else, you can present that in your case machine or if you call your client. Counsel indicated she should wait for her own case, that would be fine. Again, the circuit court indicated you've gone beyond the bounds of direct examination. At that point in time, if the issue of consent would have been more fully developed, we would be able to address the question of the involuntary nature or voluntary nature of that initial treatment. There was no further questioning regarding that treatment. And therefore, the record can be construed as saying it does not bear the burden afforded to it by a respondent. Is there a written consent form in the record? There is no documentation regarding that initial entry in this record. The timeline in this case bears recalling. We have an admission on 4-22, the filing of a petition on May 9th. The only person who testified was Dr. Markin, who testified. She did not meet respondent until May 25th, which was approximately 33 days after the entry. And the hearing in this case took place on June 11th. So we're talking about an expanse of well over a month between that initial entry and the hearing on the motion. And as such, there would have been ample opportunity for a respondent to contest if there was consent or lack thereof at the original time. It must be noted that the initial entry in the previous visit that respondent had in January of that year was to a psychiatric floor, and there was no allegation that that was a nonconsensual or involuntary admission at that time either. So Ms. Spahn is incorrect then when she indicates the doctor indicated there was no consent? The doctor does testify, again, as to a lack of consent for some procedures. People would say that there is reference on page 35 that the petitioner is taking medication, has some medical issues resolved, but for the last few days she hadn't been taking those medications before. But that is consistent with the approach that when that petition was filed on May 9th, there is no reason to disbelieve the notion that respondent had consented to treatment up until that point in time. We do have approximately from May 9th until June 11th a month's worth of post-filing petition behavior that both the doctor and the certificates attached to it refer to. And yes, there are references in this record to noncompliance with that care. That is consistent with somebody who as of that date, he may not, they no longer consented to care. And so as I understand your position then, because respondent bears the burden, whether we find that the record indicates that the admission was voluntary or even if we find some ambiguity in that regard, you prevail. Is that right? That is correct. What did the facility director say when she described process? Did she say something like we don't file petitions until there's refusal to take medication or something like that? That was not the facility director. Again, that was the treating doctor and they indicated, Dr. Markin testified on two occasions, that they have a process when it comes to filing these petitions. They said if we have somebody there and they require, we have a patient, and the medical team feels that psychiatric treatment is needed, we feel they consult four or five patients every day, we don't submit any petition for patients unless we start believing the patients need either psychiatric admission or the patient needs treatment against their will. So there is very clearly a policy in place at Mount Sinai Hospital that says that in the absence of anything to the contrary in this record, that a voluntary admitted patient would only be subject to involuntary admission on those basis. There's no discussion about whether or not Mount Sinai complies with the rest of the statute. There are very detailed findings that have to be made under the statute for a voluntary admission.  That is correct, but that presumes that the initial entry was in accordance with the mental health code. And it's a position that a voluntary admission for medical purposes, which is what this was in this record, you wouldn't have those full rings of mental health codes. So if during that she came in, let's say, we don't know how she, that she came in presenting with physical medical issues, and then during the time she's an inpatient, the determination is made that she needs to be treated for her mental health issues. And you're saying that she has no right to any kind of process when that occurs? But that's a compound question because now you have to question whether or not that respondent has received psychiatric treatment and she's consented to it. And again, under this record, we don't have that information because it was not fully developed below. So had there been a process through which a respondent would have objected to this treatment, we would have had a better stance or a better understanding of that entry in that treatment plan. However, that was not developed at any point in time in this hearing. The court is well aware that we have a relatively small record. We have one witness who testifies to her interactions with respondent after May 25th. That is it. But the statute requires the hospital to keep a record of any change as well. Not only the initial admission as an inpatient, but of any change in the whatever, status. So one would think that there would be documentation of a change. One would think that those records are not part of the record on appeal. And the respondent who has moved to this court, who has prepared the record on appeal, does not include any of those documents. The documents that are part of this record include the petition, the amended petition, the social work air intake form, and a limited chart in the record which refers to, make sure I have the common law record correct. Page 33 of the common law record does have references to some of the treatment that was received by a respondent. But it doesn't entail all of the treatment, all the circumstances surrounding her initial entry or her ongoing treatment, especially prior to Dr. Merkitt's testimony. Justice Thomason, I think you're correct in your point that if this court determines that initial entry was voluntary, the respondent's argument must fail. If this court's decision is an interview, it recognizes that the status of the person is subject to revisitation. And in a case like this, where that initial entry was voluntary, it requires the respondent to then say, that initial entry does not constitute an entry within the meaning of the code. Respondent also touched upon the question of whether or not the medical floors of Mount Sinai Hospital constitute a mental health facility. The mental health facility in this case would not have been indicated until there was a question about the mental health care received by a respondent. The In Re More decision cited by both the appellate court and other courts talks about that there are sections within a hospital devoted to treatment of mentally ill patients, and those sections or units, and not the entire hospital, are mental health facilities for the purposes of an involuntary admission under provisions of this code. So we're not talking about a physical entry into a hospital and that hospital's legal status being shifted from a licensed private hospital to a mental health facility. To the extent that respondent has alleged that the More decision and the statistical evidence she has presented that people present with combined mental and physical illnesses, people submit that those questions are properly more suited for the legislator and not before this court, because it would require this court to substantially alter the plain meaning of the statutes in order to convey the remedy that respondent is seeking. If there are no further questions, then for all of these reasons and those stated in the people's brief, we ask that this court affirm the judgment of the appellate court. Thank you very much. In rebuttal, I would like to say we are not asking the court to alter anything about the code. We are asking this court to apply the definitions of the code. To apply the definitions of treatment, to apply the definitions of where treatment is received, to apply the definition of mental health facility. If we agree with your argument, counsel, would it be for here and after, forever, the medical floor of Mount Sinai Hospital would be a mental health facility? Would the medical floor of Mount Sinai Hospital here and ever after be a mental health facility? Right. It would be a mental health facility depending on the person who is receiving treatment there. So it's a case-by-case analysis. Yes. Thank you. I would like to point out that the record here is a complete record. The burden in an involuntary mental health proceeding is on the state. The burden is on the state to prove by clear and convincing evidence that it has presented a complete case to show that a respondent should be committed by clear and convincing evidence. The burden is not on the respondent, and in fact the respondent has no obligation to testify, and that's included in our briefs with the court. The state has a burden to fully develop the proceedings in this matter, and the documents that the state refers to or referred to in its argument that refer to the Mount Sinai documents are from the state's dispositional report in this matter that was not complete. Perhaps if there had been a complete dispositional report, and I know that's not an issue, but there was no treatment plan that was supported as part of the dispositional report here. So the scant dispositional report that was filed in this matter does not contain very detailed information here. Yes, I did try at the trial level to ask the treating psychiatrist what the legal authority was for some of the treatment that was being provided to Ms. Linda B. The state objected to that question as being beyond the scope of direct. Of course it was not, because that was covered in direct examination. The state objected, and the trial judge sustained the objection. Then there was a decision that that was not needed to be covered in any kind of case in chief because of a trial strategy. But the point is it is always the state's burden to fully develop the case. And it was the state's burden here to show how was Linda B. admitted if she had been a voluntary patient prior to the filing of this  And what became apparent in this case was that there was no legal authority to hold Linda B. from April 22nd through May 9th, which serendipitously is four years ago today. And the motion pointing that out at the trial level was made after the doctor was treated as a psychiatric patient. Mount Sinai Hospital admitted her as a psychiatric patient and treated her as a psychiatric patient from April 22nd entirely through to that June 11th court proceeding. And the state didn't mention today, but the state mistakenly thought that she was transferred on May 8th to justify that May 9th petition. But of course the record does not bear that out. And the record shows that she remained on the third floor medical unit at Mount Sinai, that entire hospitalization. What in the world happened on May 8th to trigger that petition? Nothing. Somebody realized, oops, we have no authority to hold this person. We've been holding this person without legal authority and we had better do something. Did a utilization review manager look through the chart and say, my goodness, what is our basis to hold this person? Somebody hurry up and file a petition. I don't know the answer to that, but there was a petition filed at that point. And this cannot happen again. This court, we are asking this court to please recognize that persons with mental illness cannot be detained in this manner. And we're asking this court to please recognize and to protect the rights of our most vulnerable citizens and to recognize that being held without a person's willingness is a massive curtailment of fundamental liberty. Counsel, so the state takes the position that Linda B. was there voluntarily. I'm trying to understand your burden argument. It's not a burden upon the respondent to show that rather it was involuntary? There is no burden on the respondent. The state in its brief, if the state's brief is looked at carefully, the state says there is an implication that the respondent was there voluntarily because she was treated medically. And there is no citation to the record. But let's just say that's the only thing in the record. I mean, who's, you know, we're using the word burden, but whose responsibility would it be at that point to show that it was involuntary? Wouldn't it be the respondent? I'm saying that the state has the burden in an involuntary admission proceeding. The doctor testified that she was not agreeing to any treatment. Treatment under the code means hospitalization. It means diagnosis. It means evaluation. She was not agreeing to any of that, from medical or psychiatric. We have in the code that she was not willingly there. She was not consenting to anything. So the code tells us that she was not agreeing. And then the state's trying to use smoke and mirrors to say, well, there's an implication that she was voluntary to justify the hospital's filing the petition on May 9th. And I'm saying don't buy that magic that there was some reason to file the petition on May 9th. There was not. Linda B. was being prevented from leaving the hospital medical floor by one-on-one supervision, and she was being given medical treatment under no legal authority, and she was being held under no legal authority. And this court can prevent that from happening to other people by simply applying the statutory provisions of the code. We are not asking you to do anything new, but just apply the clear language of the code. What is a mental health facility? Who is getting treatment? If you're getting treatment, you're getting treatment in a mental health facility. If there are no other questions, I think I'm finished. Thank you so much. Thank you. Case number 119392 will be taken under advisement as agenda number one. Thank you, Ms. Swan and Mr. Connors, for your arguments. You're excused at this time.